IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARMANDO AGUILAR, JULIA
CUMBERLAND, and GRACIE BAXTER,
on behalf of themselves and all others
similarly situated,

                                Plaintiffs,

      v.

USAA GENERAL INDEMNITY CO. and
UNITED SERVICES AUTOMOBILE
ASSOCIATION,

                         Defendant.

_____/

CASE NO.: 6:19-cv-866-Orl-41TBS

CLASS ACTION

## AMENDED CLASS ACTION COMPLAINT

The Plaintiffs, Armando Aguilar, Julia Cumberland, and Gracie Baxter, individually and on behalf of all others similarly situated, file this Amended Class Action Complaint against USAA General Indemnity Co. and United Services Automobile Association ("USAA" or "Defendants") and in support state as follows:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiffs Armando Aguilar, insured under a United Services Automobile Association automobile policy, and Julia Cumberland and Gracie Baxter, insured under the USAA General Indemnity Co. automobile policy, all of whom are insured for private passenger auto physical damage under policies requiring payment of "Actual Cash Value" or "ACV." Additionally, Plaintiff Gracie Baxter was insured under an additional coverage entitled "Car Replacement Assistance" coverage for which an additional premium is paid.

2.     Defendants are a large private passenger auto insurance carrier operating in Florida. One of the coverages Defendants offer is comprehensive and collision coverage. Upon information and belief, Defendants systematically underpaid not just Plaintiffs but thousands of other putative Class Members amounts Defendants owed its insureds for ACV losses for total loss vehicles insured with comprehensive and collision coverage.

3.     This lawsuit is brought by the Plaintiffs individually and on behalf and all other similarly situated insureds in Florida who suffered damages due to Defendants' practice of refusing to pay full ACV payment or full total-loss payment ("FTLP") – namely, title transfer fees and tag transfer fees – to first-party total-loss insureds on physical damage policies containing comprehensive and collision coverages. The failure to pay FTLP to first-party total losses owed to the USAA insureds is a breach of the policy agreement and a clear breach of contract under Florida law.

4.     This lawsuit is additionally brought by Plaintiff Gracie Baxter individually and on behalf of all other similarly situated insureds who suffered damages due to USAA's failure to pay the full amount owed under its Car Replacement Assistance coverage – namely, by first subtracting sales tax from the ACV when calculating the additional 20% of ACV owed under the Policy – to first-party total-loss insureds whose Policy included the Car Replacement Assistance coverage.

5.     Plaintiffs bring a claim for breach of contract based on Defendants' practice of declining to include title and tag transfer fees notwithstanding its contractual obligation to do so. Plaintiff Gracie Baxter additionally brings a claim for breach of contract based on its failure to include sales tax in payments to insureds under the Car Replacement Assistance ("CRA") coverage.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (a) Plaintiffs are members of the putative classes which consist of at least 100 members and they and the Defendants are citizens of different states; (b) the amount-in-controversy exceeds $5 million dollars exclusive of interest and costs; and (c) none of the exceptions under 1332 apply to this claim.

7.      This Court has personal jurisdiction over Defendants because the Defendants at all times material hereto were licensed to transact in insurance in the State of Florida, have offices in the State of Florida, write hundreds of millions of dollars in premiums in the State of Florida, and engage in substantial business activities in the State of Florida and in this District.

8.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to the claim occurred in this district and Defendants conduct customary and extensive business in this District and are subject to personal jurisdiction in this District.

9.      Defendants write hundreds of millions of dollars worth of premiums in the State of Florida and nationwide. Upon information and belief, including the investigation of the undersigned attorneys and publicly-available claims' rates and earned premiums for private passenger auto physical damage, Defendants adjusted and settled approximately 100,000 total-loss claims in Florida during the relevant time period. The claims herein allege damages of, at minimum, $79.35 for the Florida class. The average claim for the nationwide class is approximately $900.00 – while Plaintiff Baxter does not know the exact number of total-losses of vehicle insureds under the CRA coverage, a conservative estimate of 5% of total-losses would nevertheless number well over 20,000 claims. Thus, the amount-in-controversy exceeds $5,000,000, excluding prejudgment interest, injunctive relief, costs, and attorneys' fees.

10.     All conditions precedent to the bringing of this action, if any, have occurred or have been waived.

## THE PARTIES

11.     At all time material hereto, Plaintiff Armando Aguilar is and was a citizen of the State of Florida and domiciled in Seminole County.

12.     At all times material hereto, Plaintiff Gracie Baxter is and was a citizen of the State of Florida and domiciled in Hillsborough County.

13.     At all times material hereto, Plaintiff Julia Cumberland is and was a citizen of the State of Florida and domiciled in Duval County.

14.     At all times material hereto, Defendants are and were a corporation located in the State of Texas and authorized to transact insurance in the State of Florida and conducting a substantial part of its business in this District. Defendants' principal place of business and headquarters are both located in the State of Texas.

## FACTUAL ALLEGATIONS

15.     Defendants are both subsidiary insurer entities under the USAA brand, and, along with all other USAA-branded entities, issue the same private-passenger auto ("PPA") physical damage policies, implement the same claims handling and adjustment protocols, and are subject to the same internal policies and procedures.

16.     The Form Policies issued by United Services Automobile Association and USAA General Indemnity Co. to Plaintiffs and all putative class members are virtually identical in all material respects. Affixed hereto is the Policy Form issued to Mr. Aguilar (the "Policy"). The terms therein are applicable and identical to the terms applicable to all putative Florida class members.

17.     Additionally, the Form Policy language concerning the CRA coverage available to insureds and selected by all Nationwide class members is virtually identical in all material respects, and makes the same promise to pay an additional 20% of ACV in the event of a total-loss to the insured vehicle. Affixed hereto is the CRA amendment or endorsement issued to Ms. Baxter (the "CRA Policy Clause"), which terms are applicable and identical as to all putative Nationwide class members.

18.     In its standardized Policy, Defendants promise, upon the occurrence of a total loss to an insured vehicle, to provide payment of the actual cash value or ACV of the insured vehicle to the insured.

19.     ACV includes an obligation to pay state and local regulatory fees and taxes for total loss vehicle comprehensive and collision coverage (full total-loss payment or FTLP). Such fees include title transfer fees and tag transfer fees, both of which are mandatory fees imposed by the State of Florida.

20.     Defendants promise to provide in FTLP an amount that includes amounts for (at minimum) sales tax, title transfer fees and tag transfer fees.

21.     As a matter of uniform procedure, Defendants include sales tax (except as to insureds with the CRA coverage, as discussed below) but do *not* include title and registration transfer fees.[1]

---

[1] Defendants pay such sales tax because of *Bastian v. United Servs. Auto. Ass'n*, in which Judge Corrigan ruled that Defendants failure to pay sales tax (unless and until proof of purchase was provided by the insureds) constituted a breach of contract. 137 F. Supp. 3d 1272 (M.D. Fla. 2015). At the time, Defendants included title and registration transfer fees in making the ACV payments (thereby acknowledging such fees are part of the ACV of insured vehicles) and such fees were therefore not at issue in the case. *Id*. at 1278 ("USAA's practice of paying title fees and license plate fees also cuts against the argument that sales tax is not part of the cost of buying a comparable vehicle.") The case subsequently settled as a class action, and Defendants began

22.     Although Defendant USAA General includes sales tax in payments issued to insureds without the additional CRA coverage, it removes sales tax from payments issued to insureds who, like Ms. Baxter, are insured under the additional CRA coverage.

23.     On behalf of the Florida class, Plaintiffs Aguilar and Cumberland allege that Defendants' failure to include title transfer fees and tag transfer fees in making payment to insureds (who do not have CRA coverage) who suffered a total-loss ("Transfer Fee Claim") constitutes a breach of contract.

24.     On behalf of the Nationwide class, Plaintiff Baxter alleges that USAA General's failure to pay sales tax, title transfer fees, and tag transfer fees in making payments to insureds with CRA Coverage ("CRA Claim") constitutes a breach of contract.

25.     Such conduct constitutes a breach of contract as to, respectively, all Florida class members (Transfer Fee Claim) and all Nationwide class members (CRA Claim).

### PLAINTIFF AGUILAR ACCIDENT

26.     At all times material hereto, Plaintiff Aguilar owned a 2008 GMC Canyon.

27.     At all times material hereto, Mr. Aguilar insured the vehicle under an insurance policy issued by Defendant United Services Automobile Association.

28.     On or about February 15, 2019, Plaintiff was involved in an accident while operating the vehicle.  As a result of said accident, Plaintiff filed a claim for property damage with United States Automobile Association, claim number 013789734-006.

---

paying sales tax on total-loss claims (except as to CRA insureds, as discussed herein). However, Defendants unconscionably *stopped* paying title and tag transfer fees.

29.     Following the filing of said claim, Defendant determined that the Insured Vehicle was a total loss with an adjusted vehicle value of $3,464.00, and a total (after state sales tax of 6% and county sales tax of 1%) of $3,706.48. Exh. A (Total Loss Settlement Review).

30.     The base value was calculated by a third-party vendor ("CCC"), which bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage.

31.     USAA then provided the "Total" value amount minus a $1,000.00 deductible for a final payment of $2,706.48 to Mr. Aguilar. *Id*.

32.     USAA's payment of $2,706.48 did not include amounts for title transfer or tag transfer fees and was thus not an FTLP in breach of its contract with Mr. Aguilar, because the contract promised to provide FTLP, including (at minimum) title transfer fee and tag transfer fee amounts.

## PLAINTIFF CUMBERLAND ACCIDENT

33.     At all times material hereto, Plaintiff Cumberland owned a 2012 Mercedes-Benz C-Class C250.

34.     At all times material hereto, Ms. Cumberland insured the vehicle under an insurance policy issued by Defendant USAA General Indemnity Co.

35.     On or about December 20, 2018, Ms. Cumberland was involved in an accident while operating the vehicle.  As a result of said accident, Plaintiff filed a claim for property damage with Defendant, claim number 026881378000000040001.

36.     Following the filing of said claim, USAA determined that the vehicle was a total loss with a base value of $11,616.00, an adjusted vehicle value of $12,292.00, and a total (after sales tax) of $13,079.52.

37.     The base value was calculated by a third-party vendor ("CCC"), which bases vehicles valuations on the cost to purchase similar vehicles with similar conditions and mileage. Exh. B (Valuation Report).

38.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report.  Exh. B at 1.  Rather, the Report asserted that the Total Value of $13,079.52 may not reflect the settlement amount because things such as "license and fees" were not taken into account in determining the value, and may need to be taken into account prior to final determination of the settlement amount.  Exh. B at 1.

39.     Defendant then provided the "Total" value amount as determined by CCC minus a $500.00 deductible for a final payment of $12,579.52 ACV to Ms. Cumberland. Exh. C (Total Loss Settlement Explanation or "TLSE").

40.     USAA's payment of $12,579.52 did not include amounts for title transfer or tag transfer and was thus not an FTLP in breach of its contract with Ms. Cumberland, because the contract promised to provide FTLP, including (at minimum) title transfer fee and tag transfer fee amounts.

## PLAINTIFF BAXTER ACCIDENT

41.     At all times material hereto, Plaintiff Baxter owned a 2015 Kia Sorento LX.

42.     At all times material hereto, Ms. Baxter insured the vehicle under an insurance policy issued by Defendant USAA General Indemnity Co., which included CRA coverage.

43.      On or about March 22, 2017, Ms. Baxter was involved in an accident while operating the vehicle.  As a result of said accident, Ms. Baxter filed a claim for property damage with USAA General, claim number 029564233–006.

44.     Following the filing of said claim, USAA General determined that the vehicle was a total loss with a base value of $14,687.00, an adjusted vehicle value of $15,260.00, and a total (after sales tax) of $16,225.60. Exh. D (Baxter Market Valuation Report).

45.     No amount for title transfer fee or tag transfer fee was included in the amount listed in the CCC Market Valuation Report.

46.     In its Total Loss Settlement Letter, however, USAA General *removed* the sales tax, and listed the amount as $15,260 (the adjusted vehicle value without sales tax). It then added CRA of $3,139.25 for a Net Total (after deductible) of $18,864.85. Exh. E (Baxter TLSE Letter).

47.     No amount was included for sales tax, title transfer fee, or tag transfer fee. Although USAA General concedes sales tax is owed as an element of the ACV of an insured vehicle (which is precisely what Judge Corrigan held in *Bastian*), USAA General *removes* sales tax only if the insured possesses CRA Coverage, which constitutes a breach of contract (along with the failure to pay title transfer and tag transfer fees).

### USAA BUSINESS PRACTICE AS TO TRANSFER FEES

48.     Defendants, pursuant to a standard and uniform business practice, never pay insureds transfer fee amounts after a total-loss to an insured vehicle and never pays FTLP, notwithstanding its' contractual obligation to do so.

49.     Defendants' failure to pay tag and title transfer fee amounts constitutes a breach of the Policy.

50.     Sales tax, title transfer fees and tag transfer fees are mandatory applicable fees that must be paid to replace any vehicle in the State of Florida.

51.     Florida law requires that all vehicles be properly titled and registered in order to be legally driven on Florida roadways. The fee to transfer title to a vehicle is, at minimum, $75.25.

52.     Florida law requires that all vehicles have proper license plate (or tag) in order to be legally driven on Florida roadways. The fee to transfer license plate or tag is no less than $4.10.

53.     Plaintiffs were owed FTLP, which includes title transfer fees and tag transfer fees, and state and local sales tax calculated as a percentage of the adjusted vehicle value.

54.     In breach of its contract with Plaintiffs, Defendants did not include transfer fees in making the ACV payment for Plaintiffs' total losses and thus did not make the FTLP required by its Policy.

55.     Plaintiffs paid all premiums owed and otherwise satisfied all conditions precedent such that their insurance policy was in effect and operational at the time of the accident.

### THE USAA GENERAL INSURANCE POLICY

56.     Defendants' insurance policy, under the section entitled "Part D, Physical Damage Coverage", states that "Collision" and "Comprehensive" coverage means Defendants will pay for loss to a covered auto resulting from collision of the insured vehicle with another object and for any loss not covered by collision and not excluded from the policy. Exh. F (Policy) at 21.[2]

57.     The "insured auto" or "covered auto" is defined, *inter alia*, as the auto listed in the declarations page, regardless of ownership interest. Policy at 4.

58.     In the "Physical Damage Section" section, under a provision entitled "Limits of Liability", Defendant states, in relevant part, that the "limit of liability" for loss is the Actual Cash Value (ACV) of the damaged property.  Policy at 23.

59.     The limit of liability in the event of a total loss is the ACV of the total-loss vehicle.

60.     There is no difference, for purposes of the duty to pay ACV on a first-party total loss claim, between a collision total-loss claim and an "other than collision" total-loss claim.

---

[2] All pinpoint citations are to the Policy page number, not the total Exhibit page number.

61.     ACV is defined in the Policy as, in relevant part, "the amount it would cost, at the time of loss, to buy a comparable vehicle." Policy at 21.

62.     Clearly, then, the policy language does not further define ACV as including: (1) any provision excluding mandatory transfer fees from ACV; (2) any provision deferring payment of the ACV mandatory transfer fees for any purpose whatsoever; (3) any provision requiring an insured to obtain a replacement vehicle at all in order to receive payment; (4) any provision requiring the insured to first obtain a replacement vehicle as a condition precedent to receiving ACV state and regulatory sales tax and/or fees; or (5) any provision linking the amount of ACV state and regulatory sales tax and/or fees to a particular replacement vehicle and the corresponding state or local regulatory sales tax and/or fees on said replacement vehicle.

63.     According to Defendants' Policy, insureds are owed the same amount – actual cash value of the insured vehicle – whether or not they replace the vehicle at all. Insureds are owed the same amount – actual cash value – whether or not they paid (or how much they paid) for the total-loss vehicle. Instead, in exchange for the premiums paid by the insureds, Defendants promise to pay a predictable amount – the actual cash value of the insured vehicle at the time of loss, including sales tax and transfer fees – irrespective of payments related to either the total-loss vehicle or the replacement vehicle (if any).

64.     The Policy language applies to all covered autos irrespective of ownership interests – whether owned, financed or leased, insured autos are considered the same for purposes of the Policy. There are no differences in coverage, premiums, or policy language between leased, owned, and/or financed vehicles.

**PAYMENT OF SALES TAX AND MANDATORY FEES**

65.     Sales tax, title transfer fees, and tag transfer fees are included as elements constituting the FTLP owed to insureds in the event of a total-loss.

66.     By operation of law and the Policy language, and in the view of a reasonable insured, Defendants' Policy promises to provide the costs to be incurred upon replacement of the vehicle.

67.     Nevertheless, Defendants decline to include all such fees, taxes and costs in making ACV payment to total-loss insureds – specifically tag and title transfer fee amounts – thereby breaching its contracts with insureds.

## USAA CRA CLAUSE

68.     For insureds who elect to pay for additional CRA Coverage, USAA and all its entities and subsidiaries (including USAA General) provides additional coverage of 20% of ACV on top of the full ACV.

69.     In the CRA Clause, USAA General asserts that, if the insured possesses CRA Coverage, "we will pay an additional 20% of the actual cash value of the vehicle at the time of loss." Exh. G (CRA Clause) at pg. 2 of 3.

70.     The Clause further states that such amount is separate from the amount owed under the normal comprehensive and collision coverage, i.e. actual cash value. *Id*. In other words, the two amounts do not intertwine – under comprehensive and collision coverage, insureds are owed the vehicle's ACV, and under the CRA Coverage (when applicable), insureds are separately owed an additional 20% of the vehicle's ACV.

71.     Nowhere in the Clause does USAA General assert that any amount will be subtracted from the ACV paid under comprehensive and collision coverage prior to adding the 20% owed under the CRA Coverage.

## USAA BUSINESS PRACTICE RELATED TO CRA COVERAGE

72.     USAA (including USAA General), however, violates its Policy as to insureds with CRA Coverage. Rather than paying the amount promised and paid to insureds pursuant to the comprehensive and collision coverage and then separately adding 20% of such amount, as promised by the CRA Clause, USAA *subtracts* sales tax prior to calculating the 20% additional coverage owed.

73.     Such action is in clear violation of the CRA Coverage.

74.     Consider a hypothetical where a vehicle is a total-loss, and has an adjusted vehicle value of $10,000, with sales tax of $600.00. If the insured did not have CRA Coverage, but merely had normal comprehensive and collision coverage, USAA General would pay $10,600. 20% of $10,600 is $2,120, for a total $12,720. Incredibly, however, that is *not* the amount USAA General would pay. Instead, USAA General would first *subtract* the $600.00 in sales tax, and calculate the 20% based only on the adjusted vehicle value of $10,000, which comes to $2,000. USAA General would then add that amount to the $10,000, for a total of $12,000.

75.     The total underpayment in this hypothetical – setting aside title transfer fees and tag transfer fees for purposes of the hypothetical – is $720.00. First, there is the underpayment of $600.00 owed under comprehensive and collision coverage, which USAA inexplicably *never pays at all*, not even to add to the amount after calculating the 20% owed under the CRA Clause.[3] The

---

[3] In other words, theoretically USAA could subtract sales tax prior to calculating the 20% CRA Coverage, but then add the amount back when issuing payment. Under that scenario, the total payment would be $12,600 ($10,000 plus $2,000, and then re-adding the $600.00 in sales tax), and the underpayment would only be $120.00 (20% of the $600.00 that should not have been subtracted from ACV). Thus, while such practice would still be a breach, at least USAA would still be paying sales tax and thus properly paying the comprehensive and collision coverage, and simply underpaying the CRA Coverage. Under USAA's actual practice, however, it is underpaying both the comprehensive and collision coverage, *and* the CRA Coverage.

additional underpayment of $120.00 arises because 20% of $600.00 – which should have been included in the calculation – is $120.00.

## CLASS ALLEGATIONS

76. Plaintiffs bring this action seeking representation of a class pursuant to Fed. R. Civ. 23(a) and (b)(3).

77. Plaintiffs Aguilar and Cumberland bring this action individually and as class representatives of all other persons or entities similarly situated, more specifically defined as follows:

### FLORIDA CLASS

> All insureds, under any Florida policy issued by Defendants with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss (but without CRA Coverage) where such vehicle was declared a total loss, who made a first-party claim for total loss determined by Defendants to be a covered claim, whose claim was adjusted as a total loss, where the ACV payment amount equaled less than 1) the adjusted vehicle value, plus 2) state and local sales tax, plus 3) $75.25 in title transfer fees, plus 4) $4.60 in tag transfer fees, minus 5) the applicable deductible, and where such claim was made on or after May 7, 2014, until the date of any certification order.

78. Plaintiff Baxter brings this action individually and as class representative of all persons or entities similarly situated, more specifically defined as follows:

### NATIONWIDE CLASS

> All insureds, under any United States policy issued by USAA General with the same operative policy language covering a vehicle with private-passenger auto physical damage coverage for comprehensive or collision loss and with CRA Coverage where such vehicle was declared a total loss, who made a first-party claim for total loss determined by USAA General to be a covered claim with CRA Coverage, whose claim was adjusted as a total loss, where USAA General subtracted sales tax prior to calculating the additional 20% CRA amount, and where such claim was made

within the applicable statute of limitations period prior to the date on which this Amended Complaint was filed until the date of any certification order.

## FLORIDA CLASS ALLEGATIONS

79.    In this section, "Plaintiffs" refer to Plaintiffs Aguilar and Cumberland, but not Plaintiff Baxter and "class" or "class members" refers to the Florida Class and members thereof.

80.    Plaintiffs' claims are typical under Rule 23(a)(3) to those of all the Florida Class Members because members of the class are similarly affected by Defendants' failure to pay ACV state and local sales tax and regulatory fees upon the total loss of insured vehicles. Plaintiffs' claims are typical of the claims of all other members of the class because all such claims arise from the improper failure by Defendant to pay state and local regulatory fees – specifically tag and title transfer fees – upon the total loss of insured vehicles. Plaintiffs' claim is based on the same policy language and promises as all other class members' claim. Plaintiffs are not making any unique claims nor are they subject to any affirmative defenses such that the typicality requirement is unsatisfied.

81.    The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiffs' Policy.

82.    Plaintiffs' claims raises questions of law and fact common to all Class Members within the meaning of Rule 23(a)(2) and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3).  The common questions include, but are not limited to, the following: (a) whether, under the Defendants' standardized policy language, Plaintiffs and the class members are owed FTLP upon the total loss of an insured vehicle; (b) whether Plaintiffs and the Class Members are owed title transfer fees and tag transfer fees

pursuant to the Policy promise; and (c) whether Defendants breached its insurance contracts with Plaintiffs and the Class Members by failing to make FTLP upon the total loss of an insured vehicle.

83.     Plaintiffs and their counsel will fairly and adequately protect and represent the interests of each member of both classes as contemplated by Rule 23(a)(4).

84.     Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in prosecuting class actions.  Plaintiffs' counsel successfully litigated other class action cases similar to that here, where insurers breached contracts with insureds by failing to include sales tax and/or total loss fees after total losses, and are experienced class action litigators. Plaintiffs possess no interests in conflict with those of the Class Members, and are committed to zealously protecting the interests of Class Members.

85.     Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications.  Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them.  Plaintiffs know of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

86.     The issues related to Plaintiffs' claims do not vary from the issues relating to the claims of the other members of the Class such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

87.     Certification of the class is also supported by the following considerations:

a.   The relatively small amount of damages that members of the Florida Class suffered on an individual basis would not justify the prosecution of separate lawsuits;

b.   Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class or the Defendants are a party such that the questions of fact and law relevant to Defendants and the Class can be adjudicated; and

c.   No difficulties would be encountered in the management of Plaintiffs' claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

88.   Although the precise number of Class Members is unknown to Plaintiffs at this time and can only be determined through appropriate discovery, Plaintiffs believe that because Defendants are among the largest motor vehicle insurers in the State of Florida and write hundreds of millions of dollars of private-passenger physical damage coverage premiums, the class of persons affected by the unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged herein is a standardized and uniform practice, employed by Defendants pursuant to standardized insurance policy language, and results in the retention by Defendants of insurance benefits and monies properly owed to Plaintiffs and the class members. Upon information and belief, the number of Class Members is approximately 100,000. Thus, numerosity under Rule 23(a)(1) is established.

89.   The relevant Policy provisions for each Class Member are the same. The relevant law relating to the interpretation and application of those Policy provisions for each Class Member is the same.

90.     Plaintiffs, individually and on behalf of Class Members, seek monetary damages for title and tag transfer in the amount of $79.35, which were owed under Defendants' Policy and which Defendant refused to pay.

## NATIONWIDE CLASS ALLEGATIONS[4]

91.     In this section, "Plaintiff" refers to Plaintiff Baxter, and not to Plaintiffs Aguilar and Cumberland, and "class" and "class members" refers to the Nationwide Class and members thereof.

92.     Both the Policy, including comprehensive and collision coverage, the limits of liability section, and the definition of ACV, and the CRA Clause are materially identical as to Plaintiff and all members of the Nationwide Class, and apply equally to Plaintiff and all Class Members.

93.     Plaintiff's claims are typical under Rule 23(a)(3) to those of all the Nationwide Class Members because, among other reasons, members of the class are similarly affected by USAA General's practice of subtracting sales tax prior to calculating the 20% additional CRA coverage owed to insureds and failure to properly include sales tax in making the ACV and CRA payment. Plaintiff's claim is based on the same policy language and promises as all other class members' claim. Plaintiff is not making any unique claims nor is she subject to any affirmative defenses such that the typicality requirement is unsatisfied.

94.     The material and relevant policy terms for each class member are substantially identical to the terms of Plaintiff's Policy.

---

[4] While, given similarities between the claims, Defendant, and class counsel, there is significant overlap in some of the allegations between the Florida Class and Nationwide Class, for clarity's sake, Plaintiff Baxter repeats some of the facts herein even where they overlap with those of the Florida Class.

95.     Plaintiff's claim raises questions of law and fact common to all Class Members within the meaning of Rule 23(a)(2) and they predominate over any questions affecting only individual Class Members within the meaning of Rule 23(b)(3).  The common questions include, but are not limited to, the following: (a) whether, under USAA General's standardized policy language, Plaintiff and the Class Members are owed FTLP of ACV upon the total loss of an insured vehicle, including sales tax; (b) whether USAA General is permitted to subtract sales tax from the ACV payment amount prior to calculating the additional 20% CRA Coverage owed; and (c) whether USAA General breached its insurance contracts with Plaintiff and the Class Members.

96.     Plaintiff and her counsel will fairly and adequately protect and represent the interests of each Nationwide Class Member as contemplated by Rule 23(a)(4).

97.     Plaintiff is committed to the vigorous prosecution of this action and retained competent counsel experienced in prosecuting class actions. Plaintiff possesses no interests in conflict with those of the Class Members, and is committed to zealously protecting the interests of Class Members.

98.     Pursuant to Rule 23(b)(3), a class action is superior to the other available methods for a fair and efficient adjudication of the controversy because, among other reasons, it is desirable to concentrate the litigation of the Class Members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications.  Furthermore, because the damages suffered by individual Class Members is relatively small, their interests in maintaining separate actions is questionable and the expense and burden of individual litigation makes it impracticable for Class Members to seek individual redress for the wrongs done to them.  Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

99.     The issues related to Plaintiff's claims do not vary from the issues relating to the claims of the other members such that a class action provides a more efficient vehicle to resolve this claim than through a myriad of separate lawsuits.

100.    Certification of the class is also supported by the following considerations:

    a.  The relatively small amount of damages that members of the Nationwide Class suffered on an individual basis would not justify the prosecution of separate lawsuits;

    b.  Counsel in this class action is not aware of any previously filed litigation against the Defendants in which any of the members of the class are a party and which any question of law or fact in the subject action can be adjudicated; and

    c.  No difficulties would be encountered in the management of Plaintiffs' claim on a class action basis, because the class is readily definable and the prosecution of this class action would reduce the possibility of repetitious litigation.

101.    Although the precise number of Class Members is unknown to Plaintiff at this time and can only be determined through appropriate discovery, Plaintiff believes that because USAA General is among the largest motor vehicle insurers in the State of Florida and throughout the several states, and wrote billions of dollars of private-passenger physical damage coverage premiums during the Class Period, the class of persons affected by the unlawful practice consists of thousands of individuals or the class of persons affected are otherwise so numerous that joinder of all class members is impractical. The unlawful practice alleged is a standardized and uniform practice, employed by USAA General pursuant to standardized insurance policy language, including a standardized CRA Clause, and results in the retention by USAA General of insurance benefits and monies properly owed to Plaintiff and the Class Members. Upon information and

belief, the number of Class Members likely exceeds 20,000, and could approach closer to 100,000. Thus, numerosity under Rule 23(a)(1) is established.

## COUNT I: CLAIM FOR BREACH OF CONTRACT AGAINST BOTH DEFENDANTS

102.    Paragraphs 1-21, 23, 25-40, 48-67, 76-77, and 79-90 are hereby incorporated by reference.

103.    This count is brought by Plaintiffs Julia Cumberland and Armando Aguilar individually and on behalf of the Florida Class Members.

104.    Plaintiff Cumberland was party to an insurance contract with USAA General Indemnity Co. as set forth herein. Plaintiff Aguilar was party to an insurance contract with United States Automobile Association as set forth herein. All Florida Class Members were parties to an insurance contract with Defendants containing terms materially identical to those of both Plaintiff Cumberland and Plaintiff Aguilar.

105.    The interpretation of Plaintiffs' and all Class Members' insurance policies is governed by Florida law.

106.    Plaintiffs and all Class Members made a claim determined by Defendants to be a first-party total loss under the insurance policy, and determined by Defendants to be a covered claim.

107.    Defendants, by paying the total loss claim, determined that Plaintiffs and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies necessary to be paid on her or her total loss.

108.    Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiffs and every Class Member were owed the ACV of the vehicle.

109.    Defendants refused to make a FTLP and thus failed to pay ACV owed under the Policy to Plaintiffs and every Class Member.

110.     Defendants' failure to provide the promised coverage constitutes a material breach of contract with Plaintiffs and every Class Member.

111.     As a result of said breaches, Plaintiffs and the Class Members are entitled under Defendants' insurance policies to sums representing the benefits owed for full ACV payment, including sales tax, title transfer fees, and tag transfer fees, as well as costs, prejudgment and post-judgment interest, injunctive relief and other relief as appropriate, including attorney's fees pursuant to Fla. Stat. § 627.428.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Julia Cumberland and Plaintiff Armando Aguilar, individually and on behalf of the Florida Class Members, demand a trial by jury on all triable issues and seek relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Florida Class described above;

- For an award of compensatory damages for the Class in amounts owed under the Policies;

- For all other damages according to proof;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. § 627.428;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

- For injunctive and other further forms of relief as this Court deems just and proper.

**COUNT II: CLAIM FOR BREACH OF CONTRACT AGAINST USAA GENERAL**

112.     Paragraphs 1-22, 24-25, 41-76, 78, and 91-101 are hereby incorporated by reference.

113.     This count is brought by Plaintiff Gracie Baxter individually and on behalf of the Nationwide Class Members.

114.     Plaintiff Baxter was party to an insurance contract with USAA General Indemnity Co. as set forth herein. All Nationwide Class Members were parties to an insurance contract with USAA General containing terms, including related both to Physical Damage, comprehensive and collision loss, and the CRA Clause, materially identical to those of Plaintiff Baxter.

115.     Plaintiff and all Class Members made a claim determined by USAA General to be a first-party total loss under the insurance policy, and determined by USAA General to be a covered claim, including CRA.

116.     USAA General, by paying the total loss claim, determined that Plaintiff and each Class Member complied with the terms of their insurance contracts, and fulfilled all duties and conditions under the Policies necessary to be paid on her or her total loss.

117.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and every Class Member were owed the ACV of the vehicle.

118.     Pursuant to the aforementioned uniform contractual provisions, upon the total loss of insured vehicles, Plaintiff and ever Class Member were *separately* owed an additional 20% of the ACV of the vehicle.

119.     USAA General did not include title or tag transfer fees and subtracted sales tax from the ACV Payment prior to calculating the 20% of ACV owed pursuant to the CRA Coverage, thereby breaching its contract with Plaintiff and every Class Member.

120.    USAA General did not add sales tax back to the payment amount at any time, thereby breaching its contract with Plaintiff and every Class Member.

121.    USAA General did not add title transfer or tag transfer fee amounts to the payment amount at any time, thereby breaching its contract with Plaintiff and every Class Member.

122.    USAA General's failure to provide the promised coverage constitutes a material breach of contract with Plaintiff and every Class Member.

123.    As a result of said breaches, Plaintiff and the Class Members are entitled under the insurance policies to sums representing the benefits owed for full ACV and CRA payment, including sales tax, title transfer fees and tag transfer fees, as well as costs, prejudgment and post-judgment interest, injunctive relief and other relief as appropriate, including attorney's fees pursuant to Fla. Stat. § 627.428.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Gracie Baxter, individually and on behalf of the Nationwide Class Members, demand a trial by jury on all triable issues and seek relief and judgment as follows:

- For an Order certifying this action as a Class Action on behalf of the Nationwide Class described above;

- For an award of compensatory damages for the Class in amounts owed under the Policies;

- For all other damages according to proof;

- For an award of attorney's fees and expenses as appropriate pursuant to applicable law, including Fla. Stat. § 627.428;

- For costs of suit incurred herein;

- For pre and post judgment interests on any amounts awarded;

24

● For injunctive and other further forms of relief as this Court deems just and proper.

Dated this 12th day of July, 2019.

Respectfully submitted,

**NORMAND PLLC**
*/s/ Jake Phillips*
Jacob L. Phillips
FBN: 120130
*/s/ Ed Normand*
Edmund A. Normand
FBN: 865590
NORMAND PLLC
3165 McCrory Place, Ste. 175
Orlando, FL 32803
Tel: 407.603.6031
jacob.phillips@normandpllc.com
ed@ednormand.com
service@normandpllc.com

**CHRISTOPHER J. LYNCH, P.A.**
*/s/ Christopher J. Lynch*
FBN: 331041
Christopher J. Lynch, P.A.
6915 Red Road, Suite 208
Coral Gables, FL 33143
Tel: 312.967.3653
clynch@hunterlynchlaw.com
lmartinez@hunterlynchlaw.com

**SHAMIS & GENTILE**
*/s/ Andrew J. Shamis*
Andrew J. Shamis, Esq.
FBN: 101754
ashamis@shamisgentile.com
14 NE 1st Avenue, Suite 1205
Miami, FL, 33132
305.479.2299

**EDELSBERG LAW, P.A.**
*/s/ Scott Edelsberg, Esq.*
Scott Edelsberg, Esq.
FBN: 0100537
scott@edelsberglaw.com
19495 Biscayne Blvd #607
Aventura, FL, 33180


***Counsel for Plaintiffs***